## SAUL, Commissioner, *v.* LALAURIE.

Where an agent has divested himself of all authority, by substituting another in his place, with the approbation of the principal, he cannot afterwards revive his extinct authority, and bind the principal without the consent of the latter. C. C. 2997, 2998, 2999.

APPEAL from the Commercial Court of New Orleans, *Watts*, J. *Rawle*, for the plaintiff. *L. Janin*, for the appellant.

The judgment of the court was pronounced by

SLIDELL, J. This suit is brought against Madame *Lalaurie*, as endorser of a note, dated at New Orleans, 28th December, 1843, at sixty days, made by the widow *Poeyfarré* to Madame *Lalaurie's* order. The note is drawn by *L. E. Forstall*, as agent of Madame *Poeyfarré*, and endorsed by *Placide Forstall*, as agent of Madame *Lalaurie*. At maturity the note was protested, and notice was given to *Placide Forstall*, and to the defendant's son at New Orleans. The question presented is, the authority of *P. Forstall* to endorse the note.

It appears that, in 1834, the defendant, being about to depart for France, where she has ever since resided, gave a very full power of attorney, under private signature, to *Placide Forstall*, in which she gives him the management of all her affairs in the State of Louisiana, and, among other special powers, the authority to make and endorse promissory notes in her name, draw, endorse and accept bills of exchange, draw checks on banks, &c. The power contained no authority of substitution. *Forstall* deposited this act in a notary's office;

and, in September, 1840, being " about to leave the State," delegated, by nota-rial act, to *Auguste Delassus* of New Orleans, all his powers, general and special, as agent of Madame *Lalaurie* under the original power, which is expressly referred to, authorizing *Delassus* to exercise all those powers during *Forstall's* absence. *Forstall* then went to France, where he communicated to Madame *Lalaurie* the appointment of *Delassus.* She approved it, and *Delassus* continued to act solely as her agent, not only during *Forstall's* absence, but after his return, and during a period of about three years, payiug her drafts, making collections and endorsing for her, until, in the year 1843, she ordered *Janin* to withdraw all her business from *Delassus'* hands, and enclosed *Janin* blank powers to be given to such agents as he might select.

It appears that *Delassus* had discounted for Madame *Lalaurie,* a note of Madame *Poeyfarrê's,* for some $5,000, and when it was about to mature, in order to enable the maker to pay this note, a new note was drawn by Madame *Poeyfarrê,* and endorsed by *Delassus,* as defendant's agent. This note was for $5234 15 at one year, and was dated the 13th November, 1840. It was discounted by the Commercial Bank; but whether this was done at the request of the drawer or endorser, and to whose credit the proceeds of discount were passed, does not appear. *Delassus* deposited with the bank a copy of the power of attorney, and of the substitution.

In July, 1841, *Forstall* passed another notarial act in favor of *Delassus.* In this act he refers to the notarial act of substitution, of Septemher, 1840; states that it was inserted in said act, by mistake, that *Delassus* should exercise the powers of the agency only during *Forstall's* absence, since, in reality, the intention was to substitute *Delassus* irrevocably in the agency. He then proceeds to substitute *Delassus* irrevocably; authorizes him to act fully and without reservation for Madame *Lalaurie;* and confirms all acts done by *Delassus* since his, *Forstall's,* return, although the expressions of the former act were that *Delassus* should act in his absence.

This new act appears to have been occasioned by the suggestion of the cash-ier of the bank, that *Fsrstall's* power contained no power of substitution; and, by a confusion of ideas, it seems to have been considered that this second nullity cured the first. It is proved that *Forstall* never, after the act of September, 1840, transacted Madame *Lalaurie's* affairs, nor ever attempted to sign for her, except upon the note now in suit; that *Delassus,* on the contrary, was known as the defendant's agent, and was so known by the bank. It is not positively proved that the act of July, 1841, was exhibited to the bank; but the inference from all the circumstances is irresistible that, the bank was acquainted with it. It is also certain that the defendant had ceased to consider *Forstall* as her agent.

In December, 1841, the note endorsed by *Delassus* as agent fell due in the hands of the bank, and was renewed by a new note of Madame *Poeyfarrê,* for $5000, at sixty days, also endorsed by *Delassus,* as agent. Renewals, with reduction, were made from time to time, always with *Delassus'* endorsement, as defendant's agent, till at length the transaction reached the month of December, 1843. When this renewal was about to be made, the bank asked that the endorsement should be made by *Placide Forstall.* This was done; and the bank also, it seems, required on this occasion a new endorsement, to wit, that of *Forstall, Roman & Co.*

It is not shown that the defendant ever had any knowledge, before the institution of this suit, of the present, or of any of the previous endorsements given

to the Commercial Bank. It appears that she had constantly resided in France, and that under the administration of *Delassus* her affairs had fallen into great confusion.

It is evident that the acts of temporary and irrevocable substitution were of themselves not binding on the defendant. But her ratification cured the defect, and, within the scope of the agency, she was evidently bound by the acts of *Delassus*. It is also evident that the irrevocable substitution executed by *Forstall*, together with the approbation of the principal, and the whole tenor of *Forstall's* conduct during three years, created, as regards Madame *Lalaurie*, a complete abandonment and divestiture of all authority as her agent. The relation of principal and agent, *inter se*, was extinct long before the endorsement of the present note.

But it is said the bank is a third person, and is not bound by the relations, *inter se*, of *Forstall* and the defendant. This might be true, were there no notice. But the absence of notice is incompatible with the whole course of dealing of the bank, from the inception of this matter, in 1840, down to the date of the note now sued upon, being a period of three years. *Forstall*, during all that time, neither with the bank nor the public, acted as the defendant's agent, and *Delassus* alone represented her. *Forstall* having, with the manifest approbation of the defendant, entirely divested himself of all power, and withdrawn entirely from its exercise, and this being evidently known to the bank's officers, the bank and *Forstall* could not, in contradiction of the previous course of dealing, and after the lapse of three years, by their own acts, unauthorized and unratified by the defendant, revive an extinct authority, and bind the defendant as endorser. See Civil Code, arts. 2997, 2998, 2999. Pothier on Obligations, no. 80. Ibid, Contrat de Mandat, 114 *et seq.* no. 121.

It is therefore decreed that the judgment of the Commercial Court be reversed; and that there be judgment for the defendant, with costs in both courts.